IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

STEPHANIE DARROUGH                                    PLAINTIFF

VS.                          NO._____

THE LINCOLN NATIONAL LIFE
INSURANCE COMPANY                                     DEFENDANT

## COMPLAINT

COMES NOW Plaintiff, Stephanie Darrough, by and through her attorney, Daniel A. Webb, and for her complaint states:

## PARTIES AND JURISDICTION

1.     Plaintiff is a resident of Ouachita County, Arkansas, who while working for Senior Living Communities of Arkansas (Senior Living) participated in an employer provided insurance plan for long term disability benefits (the "Plan"). The Plan was underwritten and administered by The Lincoln National Life Insurance Company ("Defendant").   The Defendant is a foreign insurance company authorized to do business in Arkansas.  See Plan attached as Exhibit A.

2.     This is an action to recover benefits pursuant to section 502(a) of the Employee Retirement Income Security Act of 1974 ("ERISA").

3.     This Court has federal question subject matter jurisdiction and personal jurisdiction over the parties and is the proper venue pursuant to 28 U.S.C. § 1391(b).

## FACTS

4.    While employed by Senior Living Plaintiff participated in the Plan. While a Plan participant Plaintiff developed serious health conditions including but not limited to the following: degenerative disk disease with cervical spine fusion surgery, low back pain, pain in both hands, radial nerve problems left upper extremity and numerous other health related problems. Plaintiff's conditions have rendered her totally and permanently disabled, and he suffers from severe physical limitations such that he is unable to perform even sedentary work on any sort of sustained basis. Defendant approved Plaintiff's claim for benefits for the period from 12/22/2013 to 08/07/2018 but has incorrectly denied all other benefits. See final administrative denial letter dated September 18, 2019 attached as Exhibit B.

5.    Despite Plaintiff's severe medical problems and her cooperation in providing Defendant with medical documentation, Defendant without legal justification refuses to pay Plaintiff the long-term disability benefits she is owed.

6.    Plaintiff has complied with all conditions precedent to entitle her to benefits, and Plaintiff received her final administrative denial on or about September 18, 2019.

7.    Defendant underwrote the Plan and is the fiduciary responsible for approving or denying claims and paying them if approved. Accordingly, Defendant maintains a conflict of interest in the present situation.

8.    Plaintiff has been forced to retain the services of counsel in order to bring this action, and Defendant is obligated to pay attorney fees in addition to the unpaid benefits owed Plaintiff.

9.      It is appropriate under these circumstances to award Plaintiff pre-judgment interest in addition to awarding her back benefits and future benefits under the Plan.

10.     The Plan is governed by Arkansas law and Arkansas Insurance Commission Rule 101 is applicable in the present case.

WHEREFORE, Plaintiff prays for an order awarding her: all unpaid back benefits, future benefits, pre-judgment interest, interest, attorney's fees, costs and all other appropriate and proper relief.

Respectfully submitted,

DANIEL A. WEBB, Ark. Bar No. 2000113
111 Center Street, Suite 1200
Little Rock, Arkansas 72201
(501) 372-2400
dwebblaw@att.net



**The Lincoln National Life Insurance Company**
A Stock Company   Home Office Location:  Fort Wayne, Indiana
Group Insurance Service Office:  8801 Indian Hills Drive, Omaha, NE 68114-4066
(800) 423-2765   Online: www.LincolnFinancial.com

CERTIFIES THAT Group Policy No.        GL 000400003002-02176        has been issued to
The Commerce Trust Company as Trustee for The Lincoln National Life Insurance Company Voluntary
Insurance Trust

The Issue Date is July 1, 2009 for the Participating Employer.

Participating Employer:  Senior Living Communities of Arkansas, LLC

The insurance is effective only if the Employee is eligible for insurance and becomes and remains insured as
provided in the Group Policy.

Certificate of Insurance for Class 1



The Employee is entitled to benefits described in this Certificate if the Employee is eligible for insurance under
the provisions of the Policy and according to the records of the Employer.

This Certificate replaces any other certificate previously issued for the benefits described inside.  As a
Certificate of insurance, this does not constitute a contract of insurance, it summarizes the provisions of the
Policy and is subject to the terms of the Policy.

PRESIDENT

**CERTIFICATE OF GROUP LONG TERM DISABILITY INSURANCE**

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

GL3002-LTD-CERT

Face Page
06/01/14

**Senior Living Communities of Arkansas, LLC**
**000400003002-02176**
**SCHEDULE OF BENEFITS**

**ELIGIBLE CLASS**

Class 1          All Full-Time Employees

GL3002-CERT-SB

06/01/14

**Senior Living Communities of Arkansas, LLC**
**000400003002-02176**
**SCHEDULE OF BENEFITS**
**For**
**Class 1 - All Full-Time Employees**

MINIMUM HOURS:  20 hours per week

WAITING PERIOD:        (For date insurance begins, refer to "Effective Date" section)
                       None

CONTRIBUTIONS:         Insured employees are required to contribute to the cost of the Long-Term Disability
                       coverage.

**LONG-TERM DISABILITY BENEFITS**

BENEFIT PERCENTAGE:     60%

MAXIMUM MONTHLY BENEFIT:     $5,000

MINIMUM MONTHLY BENEFIT:        $100 or 15% of the Insured Employee's Monthly Benefit, whichever is
                                greater

Long-Term Disability Benefits for PRE-EXISTING CONDITIONS will be subject to the Pre-Existing
Condition Exclusion on the Exclusion page.

ELIMINATION PERIOD:  90 calendar days of Disability caused by the same or a related Sickness or Injury,
which must be accumulated within a 180 calendar day period.

MAXIMUM BENEFIT PERIOD:  (For Sickness, Injury, or Pre-Existing Conditions):

| Age at Disability | Maximum Benefit Period |
|---|---|
| Less than Age 60 | To Age 65 |
| 60 | 60 months |
| 61 | 48 months |
| 62 | 42 months |
| 63 | 36 months |
| 64 | 30 months |
| 65 | 24 months |
| 66 | 21 months |
| 67 | 18 months |
| 68 | 15 months |
| 69 and Over | 12 months |

OWN OCCUPATION PERIOD means a period beginning at the end of the Elimination Period and ending 24
months later for Insured Employees.

GL3002-CERT-SB

06/01/14

# TABLE OF CONTENTS

Definitions ........................................................................................................................ 3

Eligibility ........................................................................................................................ 8

Effective Dates ................................................................................................................ 8

Individual Termination ................................................................................................... 10

Portability ........................................................................................................................ 11

Total Disability Monthly Benefit .................................................................................... 12

Partial Disability Monthly Benefit .................................................................................. 13

Other Income Benefits .................................................................................................... 15

Recurrent Disability ........................................................................................................ 16

Exclusions ....................................................................................................................... 17

Mental Illness Limitation ................................................................................................ 18

Family Income Benefit .................................................................................................... 19

Amendment ...................................................................................................................... 20

Claim Procedures Amendment ........................................................................................ 21

Claims Procedures ........................................................................................................... 22

Notice .............................................................................................................................. 26

GL3002-CERT-TOC

06/01/14

## DEFINITIONS

As used in the Policy, the following words and phrases shall have the meanings indicated:

**ACTIVE WORK** or **ACTIVELY-AT-WORK** means an Employee's full-time performance of all customary duties of such Employee's occupation at:

1.  the Employer's usual place of business; or
2.  any other business location to which the Employer requires the Employee to travel.

**BASIC MONTHLY EARNINGS** or **PREDISABILITY INCOME** means the Insured Employee's average monthly base salary or hourly pay from the Employer before taxes on the Determination Date. The **"Determination Date"** is the last day worked just prior to the date the Disability begins.

It does **not** include commissions, bonuses, overtime pay or any other extra compensation. It does not include income from a source other than the Employer. It will not exceed the amount shown in the Employer's financial records, the amount for which premium has been paid, or the Maximum Covered Monthly Earnings permitted by the Policy; whichever is less. (Maximum Covered Monthly Earnings equals the Maximum Monthly Benefit divided by the Benefit Percentage shown in the Schedule of Benefits.) Exception: For purposes of determining the Partial Disability Monthly Benefit, Basic Monthly Earnings will not exceed the amount shown in the Employer's financial records.

**COMPANY** means The Lincoln National Life Insurance Company, an Indiana corporation, whose Group Insurance Service Office address is 8801 Indian Hills Drive, Omaha, Nebraska 68114-4066.

**DAY OR DATE** means the period of time which begins at 12:01 a.m. and ends at 12:00 midnight, standard time, at the Policyholder's place of business. When used with regard to effective dates, it means 12:01 a.m. When used with regard to termination dates, it means 12:00 midnight.

**DISABLED** or **DISABILITY** means Totally Disabled and/or Partially Disabled.

**DISABILITY BENEFIT**, when used with the term Retirement Plan, means a benefit which:

1.  is payable under a Retirement Plan due to disability as defined in that plan; and
2.  does not reduce the benefits which would have been paid as Retirement Benefits at the normal retirement age under the plan if the disability had not occurred.

If the payment of the benefit does cause such a reduction, the benefit will be deemed a Retirement Benefit as defined in the Policy.

## DEFINITIONS
### (Continued)

ELIMINATION PERIOD means the number of days of Disability during which no benefit is payable. The Elimination Period shown in the Schedule of Benefits:
1.  begins on the first day of Disability; and
2.  is satisfied when the required number of days is accumulated within a period which does not exceed two times the Elimination Period.

Only days of Disability due to the same or a related Sickness or Injury will count towards the Elimination Period.

During a period of Disability, the Insured Employee may return to full-time work for an accumulated number of days not to exceed the Elimination Period. Such return to work may be at the Insured Employee's own or any other occupation. Exceptions are as follows:
1.  If an Insured Employee becomes Disabled after a return to full-time work, at his or her own occupation, for a continuous period of six months or more; then:
    (a)  a new period of Disability will begin; and
    (b)  a new Elimination Period will be required;
    in accord with the Recurrent Disability provision.
2.  If an Insured Employee becomes eligible for any other group long term disability insurance during the Elimination Period; then only continuous days of Disability will count towards that Elimination Period.

Days on which the Insured Employee returns to work on a full-time basis will not count towards the Elimination Period.

EMPLOYEE means a person:
1.  whose employment with the Employer is:
    (a)  on a regular full-time basis;
    (b)  the person's principle occupation; and
    (c)  for regular wage or salary;
2.  who is regularly scheduled to work at such occupation at least the minimum number of hours shown in the Schedule of Benefits;
3.  who is a member of an Eligible Class which is eligible for coverage under the Policy; and
4.  who is a permanent resident of the United States.

EMPLOYER means the Policyholder and includes any division, subsidiary or affiliated company named in the Application. It may also mean the Participating Employer shown on the Face Page of this Certificate.

Residual Disability

GL3002-CERT-2A

4

VIT
06/01/14

**DEFINITIONS**
**(Continued)**

FAMILY OR MEDICAL LEAVE means a leave of absence which is approved in writing by the Employer; and which is subject to:
1. the federal Family and Medical Leave Act of 1993, and any amendments to it; or
2. any similar state law requiring the Employer to grant family or medical leaves.
It does not include a period of Disability which applies toward the Elimination Period; or for which Policy benefits are paid.

HOSPITAL or INSTITUTION means a facility licensed to provide care and treatment for the condition causing the Insured Employee's disability.

INSURED EMPLOYEE means an Employee for whom Policy coverage is in effect.

INJURY means bodily injury which is caused by and results directly from an accident, independently of all other causes. For purposes of determining benefits under the Policy, a Disability will be considered due to an Injury only if:
1. the Disability begins within 90 days after the Injury; and
2. the Injury occurred while the Employee was insured under the Policy.

The term "Injury" shall not include any:
1. condition to which a physical or mental sickness, the natural progression of a sickness, or the treatment of a sickness is a substantial contributing factor; (based upon the preponderance of medical evidence);
2. condition caused solely by emotional stress or mental trauma;
3. repetitive trauma condition which results from repetitious, physically traumatic activities that occur over time;
4. pregnancy; except for complications which result from a covered Injury;
5. condition caused by infection; except for a pyogenic bacterial infection of a covered Injury; or
6. condition caused by medical or surgical treatment; except when the treatment is needed solely because of a covered Injury.

MONTHLY BENEFIT means the amount payable monthly by the Company to the Insured Employee who is Totally or Partially Disabled.

OWN OCCUPATION PERIOD means a period as shown in the Schedule of Benefits.

PARTIAL DISABILITY or PARTIALLY DISABLED shall be as defined in the Partial Disability Monthly Benefit provision.

## DEFINITIONS
### (Continued)

PHYSICIAN means a medical practitioner who:
1.    is a legally qualified Physician or surgeon (or is a professional person deemed by state law to be the same as a legally qualified physician); and
2.    is acting within the lawful scope of his or her license.

Physician does not include a person who:
1.    is the Insured Employee receiving treatment; or
2.    is a relative of the Insured Employee receiving treatment.

POLICY means the Group Long Term Disability Insurance Policy issued by the Company to the Policyholder.

POLICYHOLDER means the person, individual, firm, trust or other organization as shown on the Face Page of the Policy.

PREDISABILITY INCOME - See Basic Monthly Earnings definition.

RETIREMENT BENEFIT when used with the term Retirement Plan, means a benefit which:
1.    is payable under a Retirement Plan either in a lump sum or in the form of periodic payments;
2.    does not represent contributions made by an Employee (payments which represent Employee contributions are deemed to be received over the Employee's expected remaining life regardless of when such payments are actually received); and
3.    is payable upon:
   (a)    early or normal retirement; or
   (b)    disability if the payment does reduce the benefit which would have been paid at the normal retirement age under the plan if disability had not occurred.

RETIREMENT PLAN means a defined benefit or defined contribution plan which provides Retirement Benefits to Employees and which is not funded wholly by Employee contributions.  The term shall not include any 401(k), profit-sharing or thrift plan; informal salary continuance plan; individual retirement account (IRA); tax sheltered annuity (TSA); stock ownership plan; or a non-qualified plan of deferred compensation.  An Employer's Retirement Plan is deemed to include any Retirement Plan:
1.    which is part of any federal, state, county, municipal or association retirement system; and
2.    for which the Employee is eligible as a result of employment with the Employer.

SICKNESS means illness, pregnancy or disease.

GL3002-CERT-4 91

06/01/14

## DEFINITIONS
## (Continued)

TOTAL DISABILITY or TOTALLY DISABLED means that an Insured Employee, due to an Injury or Sickness is unable:
1. during the Elimination Period and the Own Occupation Period, to perform each of the main duties of the Insured Employee's regular occupation; and
2. after the Own Occupation Period, to perform each of the main duties of any gainful occupation for which the Insured Employee's training, education or experience will reasonably allow.

For Insured Employees employed as pilots, co-pilots or crew of aircraft, Total Disability or Totally Disabled means that the Insured Employee due to an Injury or Sickness is unable:
1. to perform the material and substantial duties of such Insured Employee's regular occupation; and
2. after benefits have been paid for 12 months, to perform the material and substantial duties of any gainful occupation for which the Insured Employee's training, education or experience will reasonably allow.  The loss of a pilot's license for any reason does not, by itself, constitute Total Disability.

WAITING PERIOD means the period of time that begins with an Employee's most recent date of employment with the Employer and ends on the day prior to the day such Employee is eligible for coverage under the Policy.

GL3002-CERT-5 MO

7

06/01/14

## ELIGIBILITY

**ELIGIBLE CLASSES.** The classes of Employees eligible for insurance are shown in the Schedule of Benefits. The Company has the right to review and terminate any or all classes eligible under the Policy, if any class ceases to be covered by the Policy.

**ELIGIBILITY DATE.** An Employee becomes eligible for coverage provided by the Policy on the later of:
1. the Policy's date of issue; or
2. the date the Waiting Period is completed.

**Prior Service Credit Towards Waiting Period.** The Waiting Period is shown in the Schedule of Benefits. Prior service in an Eligible Class will apply toward the Waiting Period, when:
1. a former Employee is rehired within one year after his or her employment ends; or
2. an Employee returns from an approved Family or Medical Leave within:
   a. the 12-week leave period required by federal law; or
   b. any longer period required by a similar state law; or
3. an Employee returns from a Military Leave within the period required by federal USERRA law.

## EFFECTIVE DATES

**EFFECTIVE DATE.** An Employee's initial amount of coverage becomes effective at 12:01 a.m. on the latest of:
1. the first day of the Insurance Month coinciding with or next following the date the Employee becomes eligible for the coverage;
2. the date the Employee resumes Active Work, if not Actively at Work on the day he or she becomes eligible;
3. the first day of the Insurance Month following the date the Employee makes written application for coverage and signs;
   a. a payroll deduction order, if the Employees pay any part of the Policy premium; or
   b. an order to pay premiums from the Employee's Flexible Benefits Plan account, if premiums are paid through such an account; or
4. the first day of the Insurance Month following the date the Company approves the Employee's Evidence of Insurability, if required.

Any increased or additional coverage becomes effective at 12:01 a.m. on the latest of:
1. the first day of the Insurance Month coinciding with or next following the date on which the Insured Employee becomes eligible for the increase, if Actively at Work on that day;
2. the date the Insured Employee resumes Active Work, if not Actively at Work on the day the increase would otherwise take effect; or
3. the first day of the Insurance Month following the date any required Evidence of Insurability is approved by the Company.

Any decrease will take effect on the day of the change, whether or not the Insured Employee is Actively at Work.

GL3002-CERT-7 04

06/01/14

## ELIGIBILITY

**EVIDENCE OF INSURABILITY.** Evidence of Insurability satisfactory to the Company must be submitted (at the Employee's expense) when:

1. an Employee makes written application for coverage (or an increased amount of coverage) more than 31 days after becoming eligible for the coverage;
2. an Employee makes written application to enroll for coverage after he or she has requested:
   a. to cancel insurance;
   b. to stop payroll deductions for the insurance; or
   c. to stop premium payments from the Flexible Benefits Plan account;
3. coverage is elected after the Employee has caused insurance to lapse, by failing to pay the required premium when due; or
4. optional, supplemental or voluntary coverage is elected in excess of any Guaranteed Issue Amounts shown in the Schedule of Benefits.

**EFFECTIVE DATE FOR CHANGE IN ELIGIBLE CLASS.** An Insured Employee may become a member of a different Eligible Class. Coverage under the different Eligible Class will be effective:

1. on the first day of the Insurance Month coinciding with or next following the date of the change;
2. except as stated in the Effective Date provision for increases or decreases.

**REINSTATEMENT RIGHTS.** If an Insured Employee's coverage terminates due to one of the following breaks in service, he or she will be entitled to reinstate the coverage upon resuming Active Work with the Employer within the required timeframe. **"Reinstatement"** or **"to reinstate"** means to re-enroll for Policy coverage, without satisfying a new Waiting Period or providing Evidence of Insurability. Reinstatement is available upon:

1. return from an approved Family or Medical Leave within:
   a. the 12-week period required by federal law; or
   b. any longer period required by a similar state law; or
2. return from a Military Leave within the period required by federal USERRA law;
3. return from any other approved leave of absence within six months after the leave begins;
4. return within 12 months following a lay off; or
5. return within 12 months following termination of employment for any other reason.

To reinstate coverage, the Employee must apply for coverage or be re-enrolled within 31 days after resuming Active Work in an Eligible Class. The reinstated amount of insurance may not exceed the amount that terminated. Reinstatement will take effect on the date the Insured Employee returns to Active Work.

If the above conditions are met, then:

1. the months of leave will count towards any unmet Pre-Existing Condition Exclusion period; and
2. a new Pre-Existing Condition Exclusion will not apply to the reinstated amount of insurance.

A new Pre-Existing Condition Exclusion will apply to any increased amount of insurance.

GL3002-CERT-7 04

06/01/14

## INDIVIDUAL TERMINATION

INDIVIDUAL TERMINATION OF COVERAGE.  An Insured Employee's coverage will terminate at 12:00 midnight on the earliest of:
1.  the date this Policy terminates or the Insured Employee's Employer ceases to be a Participating Employer; but without prejudice to any claim incurred prior to termination;
2.  the date the Insured Employee's Class is no longer eligible for insurance;
3.  the date such Insured Employee ceases to be a member of an Eligible Class;
4.  the end of the period for which the last required Employee contribution has been paid; or
5.  the date the Insured Employee's employment with the Employer terminates.

Ceasing Active Work is deemed termination of employment; but insurance may be continued as follows.
1.  If an Insured Employee is absent due to Disability; then insurance may be continued during:
    (a)  the Elimination Period; and
    (b)  the period for which premium is waived.
2.  If an Insured Employee goes on an approved Family or Medical Leave; then insurance may be continued, until the earliest of:
    (a)  the end of the leave period approved by the Employer;
    (b)  the end of the leave period required by federal or state law (whichever is greater);
    (c)  the date the Insured Employee notifies the Employer that he or she will not return; or
    (d)  the date the Insured Employee begins employment with another employer;
    provided the Company receives the required premium from the Employer.
3.  When an Insured Employee goes on a temporary lay-off, or an approved leave of absence which is not subject to the federal Family and Medical Leave Act (or any similar state law); then insurance may be continued:
    (a)  until the end of the calendar month following the month in which the lay-off or leave began;
    (b)  provided the Company receives the required premium from the Employer.
4.  If an Insured Employee goes on a military leave, coverage may be continued for the greater of:
    (a)  the same period allowed for an approved Family or Medical leave; or
    (b)  any more favorable leave in which employees with similar seniority, status, and pay, who are on furlough or leave of absence, are granted by the Employer; provided premium payments are made on his or her behalf.

The Employer must not act so as to discriminate unfairly among Employees in similar situations.  Insurance may not be continued when an Insured Employee ceases Active Work due to a labor dispute, strike, work slowdown or lockout.

Termination of the Policy during a Disability shall have no affect on the benefits payable to the Insured Employee for that Disability.

## PORTABILITY

ELIGIBILITY.  The Policy provides portability provision, when an Insured Employee's insurance under the Policy terminates because his or her employment with the Employer ends; provided:
    (1)   the Insured Employee is not Disabled, retired or on leave of absence; and
    (2)   the Insured Employee was insured under the Employer's group long term disability plan for at least 12 months in a row, just prior to the date employment ended.
The 12 months may be a combination of coverage under the Policy, and under any prior group long term disability plan the Policy replaces.

APPLICATION.  To continue insurance, written application and the first premium payment must be made within 31 days of the date insurance would otherwise end.

AMOUNT OF COVERAGE.  The amount of continued insurance may not exceed the amount in force when employment ends.  A former Employee may decrease the amount of continued insurance:
    (1)   at any time during the continuation period;
    (2)   by completing a request form supplied by the Company.
The decrease will take effect on the first day of the Insurance Month after the Company receives the request.

PAYMENT OF PREMIUM.  Timely payment of premium must be made directly to the Company, throughout the period of continued insurance.  The required premium will equal:
    (1)   the group rate in effect when employment ends; plus
    (2)   a direct billing fee based upon the premium frequency chosen.

The premium frequency may be changed by sending the Company advance written request on forms supplied by the Company.  Such request may be sent at any time while continued insurance is in force; but not during a Grace Period.

TERMINATION OF COVERAGE.  Continued insurance will end on the earliest of:
    (1)   the date insurance has been continued for 12 months;
    (2)   the date the Policy terminates; but without prejudice to any claim incurred prior to termination;
    (3)   the end of the period for which premium has been paid;
    (4)   the date the Insured Employee retires;
    (5)   the date the Insured Employee enters the armed services of any state or country on active duty (If the Insured Employee sends proof of military service, the Company will refund any unearned premium); or
    (6)   the date the Insured Employee is covered under any other group long term disability plan.

Continued insurance will not end when the Employer ceases to be a Participating Employer, however.

GL3002-CERT-8.2

11

VIT PORT.
06/01/14

## TOTAL DISABILITY MONTHLY BENEFIT

The Company will pay a Total Disability Monthly Benefit to an Insured Employee after the completion of the Elimination Period if such Insured Employee:
1.  is Totally Disabled;
2.  requires the regular attendance of a Physician; and
3.  submits proof of continued Total Disability, at the Insured Employee's expense, to the Company upon request.

The Total Disability Monthly Benefit will cease on the earliest of:
1.  the date the Insured Employee ceases to be Totally Disabled;
2.  the date the Insured Employee dies; or
3.  the date the Maximum Benefit Period ends.

The amount of the Total Disability Monthly Benefit equals:
1.  the Insured Employee's Basic Monthly Earnings multiplied by the Benefit Percentage (limited to the Maximum Monthly Benefit); minus
2.  Other Income Benefits.

The amount of the Total Disability Monthly Benefit will not be less than the Minimum Monthly Benefit as shown in the Schedule of Benefits or 15% of the Insured Employee's Monthly Benefit, whichever is greater. The Benefit Percentage, Maximum Monthly Benefit, Minimum Monthly Benefit and Maximum Benefit Period are shown in the Schedule of Benefits.

GL3002-CERT-9 MO

12

06/01/14

## PARTIAL DISABILITY MONTHLY BENEFIT

The Company will pay a Partial Disability Monthly Benefit to an Insured Employee, after completion of the Elimination Period; if he or she:
1.  is Disabled;
2.  is engaged in Partial Disability Employment;
3.  is earning at least 20% of Predisability Income when Partial Disability Employment begins;
4.  requires regular attendance of a Physician; and
5.  submits proof of Partial Disability, at his or her own expense, to the Company upon request.

The Insured Employee does not have to be Totally Disabled prior to receiving Partial Disability Monthly Benefits. The Elimination Period may be satisfied by consecutive days of Total Disability, Partial Disability or any combination thereof.

The Partial Disability Monthly Benefit will cease on the earliest of:
1.  the date the Insured Employee ceases to be Partially Disabled or dies;
2.  the date the Maximum Benefit Period ends;
3.  the date the Insured Employee earns more than 99% of Predisability Income, until Partial Disability Monthly Benefits have been paid for 24 months for the same period of Disability; or
4.  the date the Insured Employee earns more than 85% of Predisability Income, after Partial Disability Monthly Benefits have been paid for 24 months for the same period of Disability.

The Company has the option to average earnings over three consecutive months, in the event that the Insured Employee earns less than 85% of Predisability Income in the succeeding months.

## DEFINITIONS

PARTIAL DISABILITY or PARTIALLY DISABLED means that, as a result of a Sickness or Injury, the Insured Employee is:
1.  unable to perform one or more of the material and substantial duties of his or her regular occupation; or
2.  unable to perform such duties on a full time basis.

PARTIAL DISABILITY EMPLOYMENT means the Insured Employee continues or resumes working at his or her own or any other occupation; but because of a Partial Disability:
1.  the Insured Employee's hours are reduced; or
2.  one or more main duties of the job are eliminated or reassigned.

After the Insured Employee has received Partial Disability Monthly Benefits for 24 months for the same period of Disability, his or her current earnings may not exceed 85% of Predisability Income. This reduction in earnings must be due to the injury or sickness causing the Partial Disability.

Residual Disability

## PARTIAL DISABILITY MONTHLY BENEFIT
### (Continued)

BENEFIT AMOUNT. The Partial Disability Monthly Benefit will replace the Insured Employee's Lost Income; provided it does not exceed the Total Disability Monthly Benefit, which would otherwise be payable during Total Disability without the Partial Disability Employment.

Thus, the amount of the Partial Disability Monthly Benefit will equal the lesser of A or B below.

A. LOST INCOME: The Insured Employee's Predisability Income, minus all Other Income Benefits (including earnings from Partial Disability Employment).

B. TOTAL DISABILITY MONTHLY BENEFIT otherwise payable:
   1. The Insured Employee's Predisability Income multiplied by the Benefit Percentage (limited to the Maximum Monthly Benefit); minus
   2. Other Income Benefits, except for earnings from Partial Disability Employment.

The Partial Disability Monthly Benefit will never be less than the Minimum Monthly Benefit, or 15% of the Insured Employee's monthly benefit, whichever is greater. The Benefit Percentage, Maximum Monthly Benefit, Minimum Monthly Benefit, and Maximum Benefit Period are shown in the Schedule of Benefits.

Progressive Calculation

GL3002-CERT-10.4 MO

06/01/14

## OTHER INCOME BENEFITS

OTHER INCOME BENEFITS mean those benefits shown below:
1. Any temporary or permanent benefits or awards for which the Insured Employee is eligible under:
   (a) Workers' or Workmen's Compensation Law;
   (b) occupational disease law; or
   (c) any other act or law of like intent.
2. Any disability income benefits for which the Insured Employee is eligible under any compulsory benefit act or law.
3. Any disability income benefits for which the Insured Employee is eligible under:
   (a) any other group plan, sick leave or formal salary continuance plan of the Employer;
   (b) any governmental retirement system as a result of the Insured Employee's job with the Employer.
4. Any Disability Benefits or Retirement Benefits the Insured Employee receives under a Retirement Plan, as a result of his or her employment with the Employer.
5. Benefits under the Social Security Act, or any similar plan or act as follows:
   (a) Disability benefits for which:
      i. the Insured Employee is eligible; and
      ii. the Insured Employee's spouse, child or children are eligible because of the Insured Employee's Disability.
6. Earnings the Insured Employee earns or receives from any form of employment.

These Other Income Benefits, except Retirement Benefits, are benefits resulting from the same Disability for which a Monthly Benefit is payable under the Policy.

COST-OF-LIVING FREEZE. After the first deduction for each of the Other Income Benefits, the Monthly Benefit will not be further reduced due to any cost-of-living increases payable under these Other Income Benefits.

LUMP SUM PAYMENTS. Other Income Benefits which are paid in a lump sum will be prorated on a monthly basis over the time period for which the sum is given. If no time period is stated, the sum will be prorated on a monthly basis over the time the Company expects the Insured Employee to live, based on the most current C.S.O. Table of Mortality.

Full Social Security Integration

GL3002-CERT-11 93 MO

06/01/14

## RECURRENT DISABILITY

A Recurrent Disability will be treated as a new period of Disability and a new Elimination Period must be completed before further Monthly Benefits are payable if the Insured Employee returns to such Insured Employee's regular occupation on a full-time basis for six months or more.

"Recurrent Disability" means a Disability which is related or due to the same cause(s) as a prior Disability for which a Monthly Benefit was payable.

A Recurrent Disability will be treated as part of the prior Disability if an Insured Employee returns to such Insured Employee's regular occupation on a full-time basis for less than six months.

To qualify for a Monthly Benefit, the Insured Employee must earn less than 80% of Predisability Income.

Monthly Benefit payments will be subject to the terms of the Policy for the prior Disability.

If an Insured Employee becomes eligible for coverage under any other group long term disability policy, this Recurrent Disability Provision will cease to apply to that Insured Employee.

GL3002-CERT-12

06/01/14

## EXCLUSIONS

GENERAL EXCLUSIONS.  The Policy will not cover any Total or Partial Disability due to:
1. war, declared or undeclared or any act of war;
2. intentionally self-inflicted injuries while sane;
3. active participation in a riot;
4. the Insured Employee's committing of or the attempting to commit a felony or any type of assault or battery.

PRE-EXISTING CONDITION EXCLUSION.  The Policy will not cover any Total or Partial Disability:
1. which is caused or contributed to by, or results from a Pre-Existing Condition; and
2. which begins in the first 24 months after the Insured Employee's Effective Date, unless such Insured Employee received no Treatment of the condition for 12 consecutive months after the Insured Employee's Effective Date.

"Pre-Existing Condition" means a Sickness or Injury for which the Insured Employee received treatment within 12 months prior to the Insured Employee's Effective Date.

"Treatment" means consultation, care or services provided by a Physician including diagnostic measures and taking prescribed drugs and medicines.

12/12/24 Pre-Existing Condition Exclusion

GL3002-CERT-13 VIT

06/01/14

## MENTAL ILLNESS LIMITATION

Benefits for Total or Partial Disability due to Mental Illness will not exceed 24 months of Monthly Benefit payments unless the Insured Employee:

1. is in a Hospital or Institution at the end of the 24 month period. The Monthly Benefit will be paid during confinement. If the Insured Employee remains Totally or Partially Disabled when discharged, the Monthly Benefit will be paid for a recovery period of up to 90 days.

   If the Insured Employee is again confined during the 90 day recovery period for at least 14 days in a row, benefits will be paid for the reconfinement and another recovery period of up to 90 more days.

2. continues to be Totally or Partially Disabled and becomes confined in a Hospital or Institution after the 24 month period and for at least 14 consecutive days. The Monthly Benefit will be payable during the confinement.

In any case, the Monthly Benefit will not be payable beyond the Maximum Benefit Period.

"Mental Illness" means mental, nervous or emotional diseases and disorders of any type.

Mental Illness Limitation

GL3002-CERT-14

18

06/01/14

## FAMILY INCOME BENEFIT

The Company will pay a lump sum benefit to the Eligible Survivor when proof is received that an Insured Employee died:
1.    after Disability had continued for 180 or more consecutive days; and
2.    while receiving a Monthly Benefit.

The benefit will be equal to three times the Insured Employee's Last Monthly Benefit.

"Last Monthly Benefit" means the gross Monthly Benefit payable to the Insured Employee immediately prior to death.  Any reductions for Other Income Benefits, or for earnings the Insured Employee received for Partial Disability Employment, will not apply.

"Eligible Survivor" means the Insured Employee's:
1.    surviving spouse; or, if none
2.    surviving children who are under age 25 on the Insured Employee's date of death.

If payment becomes due to the Insured Employee's children; then payment will be made to:
1.    the surviving children, in equal shares; or
2.    a person named by the Company to receive payments on the children's behalf.

This payment will be valid and effective against all claims by others representing, or claiming to represent, the children.

Three Month Survivor Benefit

GL3002-CERT-16 94

19                                                                06/01/14

# CERTIFICATE AMENDMENT

**TO BE ATTACHED TO THE CERTIFICATE FOR GROUP POLICY NO: 000400003002-02176**
**ISSUED TO: Senior Living Communities of Arkansas, LLC**
**FOR CERTIFICATES DELIVERED IN ARKANSAS**

A.  **On the CLAIMS PROCEDURES page, the PAYMENT OF CLAIMS section is amended to read as follows:**

   PAYMENT OF CLAIMS. When the Company receives proof of claim, benefits under the Policy will be paid monthly, by the end of each 30-day period for which the Company is liable. Any balance remaining unpaid at the end of that period of liability will be paid on a pro-rata basis, immediately upon receipt of due proof of claim. The daily rate will equal 1/30 of the monthly benefit.

B.  **SERVICE AND COMPLAINT CONTACTS**

   The Lincoln National Life Insurance Company's Policyholder Service Office may be contacted at: The Lincoln National Life Insurance Company, 8801 Indian Hills Drive, Omaha, Nebraska 68114-4066 (Phone (800) 423-2765).

   If we fail to provide you with reasonable and adequate service, you should feel free to contact: Arkansas Insurance Department, Customer Services Division, 1200 West Third Street, Little Rock, Arkansas 72201 (Phone 1-800-852-5494).

**This amendment applies only to Certificates delivered to Participating Employers in the state of Arkansas. This amendment takes effect on your effective date of coverage under the Policy. In all other respects, this Certificate remains the same.**

**THE LINCOLN NATIONAL LIFE INSURANCE COMPANY**

Officer of the Company

GL3002-AMEND.VIT AR

20                                                                                    06/01/14

## CERTIFICATE AMENDMENT

## TO BE ATTACHED TO AND MADE A PART OF THE GROUP CERTIFICATE

**AMENDMENT OF CLAIMS PROCEDURES.**  The attached Claims Procedures have been revised to comply with final regulations:

(1)    which the U.S. Department of Labor's Pension and Welfare Benefits Administration (PWBA) issued on November 21, 2000; and

(2)    which govern the claims and appeals process for employee benefit plans subject to ERISA (the Employee Retirement Income Security Act of 1974).

These revised Claims Procedures will replace those in the Certificate effective January 1, 2002.  They will apply to all claims filed on or after that date.

**This amendment takes effect on January 1, 2002, or on the insured's effective date of coverage under the Policy; whichever is later.  In all other respects, the Certificate remains the same.**

**THE LINCOLN NATIONAL LIFE INSURANCE COMPANY**

_____
Officer of the Company

GL02-CP-AMEND

21

## CLAIMS PROCEDURES

**NOTICE OF CLAIM.** Written notice of claim must be given during the Elimination Period. The notice must be sent to the Company's Group Insurance Service Office. It should include:
1. the Insured Employee's name and address; and
2. the number of the Policy.

If this is not possible, written notice must be given as soon as it is reasonably possible.

**CLAIM FORMS.** When notice of claim is received, the Company will send claim forms to the Insured Employee. If the Company does not send the forms within 15 days, the Insured Employee may send the Company written proof of Disability in a letter. It should state the date the Disability began, its cause and degree. The Company will periodically send the Insured Employee additional claim forms.

**PROOF OF CLAIM.** The Company must be given written proof of claim within 90 days after the end of the Elimination Period. When it is not reasonably possible to give written proof in the time required, the claim will not be reduced or denied solely for this reason, if the proof is filed:
1. as soon as reasonably possible; and
2. in no event later than one year after it was required.

These time limits will not apply while an Insured Employee lacks legal capacity.

Proof of claim must be provided at the Insured Employee's own expense. It must show the date the Disability began, its cause and degree. Documentation must include:
1. completed statements by the Insured Employee and the Employer;
2. a completed statement by the attending Physician, which must describe any restrictions on the Insured Employee's performance of the duties of his or her Regular Occupation;
3. proof of any other income received;
4. proof of any benefits available from other income sources, which may affect Policy benefits;
5. a signed authorization for the Company to obtain more information; and
6. any other items the Company may reasonably require in support of the claim.

Proof of continued Disability, Regular Care of a Physician, and any Other Income Benefits affecting the claim must be given to the Company. This must be supplied within 45 days after the Company requests it. If it is not, benefits may be denied or suspended.

**EXAMINATION.** The Company may have the Insured Employee examined:
1. by a Physician, specialist or vocational rehabilitation expert of the Company's choice;
2. as often as reasonably required while a claim or appeal is pending.

Any such exam will be at the Company's expense.

The Company may determine that (in its opinion) the Insured Employee has:
1. failed to cooperate with an examiner;
2. failed to take an exam scheduled by the Company; or
3. postponed such an exam more than twice.

In that event, benefits may be denied or suspended, until the required exam is completed.

**TIME OF PAYMENT OF CLAIMS.** Benefits payable under the Policy will be paid immediately after the Company receives complete proof of claim and confirms liability. After that:
1. Any benefits will be paid monthly, during any period for which the Company is liable. If benefits are due for less than a month, they will be paid on a pro rata basis. The daily rate will equal 1/30 of the Monthly Benefit.
2. Any balance, which remains unpaid at the end of the period of liability, will be paid immediately after the Company receives complete proof of claim and confirms liability.

GL3002-CERT-6 04 AR

06/01/14

## CLAIMS PROCEDURES
### (Continued)

**TO WHOM PAYABLE.** All benefits are payable to the Insured Employee, while living. After his or her death, benefits will be payable as follows.
1.    Any Survivor Benefit will be payable in accord with that section.
2.    Any other benefits will be payable to the Insured Employee's estate.

If a benefit becomes payable to:
1.    the Insured Employee's estate; or
2.    a minor or any other person who is not legally competent to give a valid receipt;
then up to $1,000 may be paid to any relative of the Insured Employee that the Company finds entitled to payment. If payment is made in good faith to such a relative, the Company will not have to pay that benefit again.

**NOTICE OF CLAIM DECISION.** The Company will send the Insured Employee a written notice of its claim decision. If the Company denies any part of the claim, the written notice will explain:
1.    the reason for the denial, under the terms of the Policy and any internal guidelines;
2.    how the Insured Employee may request a review of the Company's decision; and
3.    whether more information is needed to support the claim.
This notice will be sent within 15 days after the Company resolves the claim. It will be sent within 45 days after the Company receives the first proof of claim, if reasonably possible.

**Delay Notice.** The Company may need more than 15 days to process the claim, due to matters beyond its control. If so, an extension will be permitted. In that event, the Company will send the Insured Employee a written delay notice:
1.    by the 15th day after receiving the first proof of claim; and
2.    every 30 days after that, until the claim is resolved.

The notice will explain:
1.    what additional information is needed to determine liability; and
2.    when a decision can be expected.
If the Insured Employee does not receive a written decision by the 105th day after the Company receives the first proof of claim, there is a right to an immediate review, as if the claim was denied.

**Exception:** The Company may need more information from the Insured Employee to process a claim. If so, it must be supplied within 45 days after the Company requests it. The resulting delay will not count towards the above time limits for claim processing.

**REVIEW PROCEDURE.** Within 180 days after receiving a denial notice, the Insured Employee may request a claim review by sending the Company:
1.    a written request; and
2.    any written comments or other items to support the claim.
The Insured Employee may review certain non-privileged information relating to the request for review.

The Company will review the claim and send the Insured Employee a written notice of its decision. The notice will state the reasons for the Company's decision, under the terms of the Policy and any internal guidelines. If the Company upholds the denial of all or part of the claim, the notice will also describe:
1.    any further appeal procedures available under the Policy;
2.    the right to access relevant claim information; and
3.    the right to request a state insurance department review, or to bring legal action.
This notice will be sent within 45 days after the Company receives the request for review, or within 90 days if a special case requires more time.

GL3002-CERT-6 04 AR

06/01/14

## CLAIMS PROCEDURES
### (Continued)

**Delay Notice.** If the Company needs more than 45 days to process an appeal, in a special case:
1. an extension of up to 45 more days will be permitted; and
2. the Company will send the Insured Employee a written delay notice, by the 30th day after receiving the request for review.

The notice will explain:
1. the special circumstances which require the delay;
2. whether more information is needed to review the claim; and
3. when a decision can be expected.

**Exception:** The Company may need more information from the Insured Employee to process an appeal. If so, it must be supplied within 45 days after the Company requests it. The resulting delay will not count towards the above time limits for appeal processing.

**Claims Subject to ERISA** (Employee Retirement Income Security Act of 1974). Before bringing a civil legal action under the federal labor law known as ERISA, an employee benefit plan participant or beneficiary must exhaust available administrative remedies. Under the Policy, the plan participant or beneficiary must first seek two administrative reviews of the adverse claim decision, in accord with this section. After the required reviews:
1. an ERISA plan participant or beneficiary may bring legal action under Section 502(a) of ERISA; and
2. the Company will waive any right to assert that he or she failed to exhaust administrative remedies.

**RIGHT OF RECOVERY.** If benefits have been overpaid on any short-term disability or long-term disability claim, full reimbursement to the Company is required within 60 days. If reimbursement is not made, the Company has the right to:
1. reduce future benefits and suspend payment of the Minimum Monthly Benefit under the Policy, until full reimbursement is made;
2. reduce benefits payable to the Insured Employee or his or her beneficiary under any group insurance policy issued by the Company, until full reimbursement is made; or
3. recover such overpayments from the Insured Employee or his or her estate.

Such reimbursement is required whether the overpayment is due to:
1. the Company's error in processing a claim;
2. the Insured Employee's receipt of Other Income Benefits;
3. fraud, misrepresentation or omission of relevant facts; or
4. any other reason.

**LEGAL ACTIONS.** No legal action to recover any benefits may be brought until 60 days after the required written proof of claim has been given. No such legal action may be brought more than three years after the date written proof of claim is required.

**COMPANY'S DISCRETIONARY AUTHORITY.** Except for the functions that the Policy clearly reserves to the Policyholder or Employer, the Company has the authority to manage the Policy, interpret its provisions, administer claims and resolve questions arising under it. The Company's authority includes (but is not limited to) the right to:
1. establish administrative procedures, determine eligibility and resolve claims questions;
2. determine what information the Company reasonably requires to make such decisions; and
3. resolve all matters when an internal claim review is requested.

Any decision the Company makes in the exercise of its authority shall be conclusive and binding; subject to the Insured Employee's rights to request a state insurance department review or to bring legal action.

This provision does not apply to residents of California.

GL3002-CERT-6 04 AR

06/01/14

# CLAIMS PROCEDURES

GL3002-CERT-6 04 AR

06/01/14

## LIMITATIONS AND EXCLUSIONS UNDER THE ARKANSAS LIFE AND HEALTH INSURANCE GUARANTY ASSOCIATION ACT

Residents of this state who purchase life insurance, annuities or health and accident insurance should know that the insurance companies licensed in this state to write these types of insurance are members of the Arkansas Life and Health Insurance Guaranty Association ("Guaranty Association"). The purpose of the Guaranty Association is to assure that policy and contract owners will be protected, within certain limits, in the unlikely event that a member insurer becomes financially unable to meet its obligations. If this should happen, the Guaranty Association will assess its other member insurance companies for the money to pay the claims of insured persons who live in this state and, in some cases, to keep coverage in force. The valuable extra protection provided by these insurers through the Guaranty Association is not unlimited, however. And, as noted in the box below, this protection is not a substitute for consumers' care in selecting companies that are well managed and financially stable.

---

**DISCLAIMER**

**The Arkansas Life and Health Insurance Guaranty Association ("Guaranty Association") may not provide coverage for this policy. If coverage is provided, it may be subject to substantial limitations or exclusions, and require continued residency in this state. You should not rely on coverage by the Guaranty Association in purchasing an insurance policy or contract.**

**Coverage is NOT provided for your policy or contract or any portion of it that is not guaranteed by the insurer or for which you have assumed the risk, such as non-guaranteed amounts held in a separate account under a variable life or variable annuity contract.**

**Insurance companies or their agents are required by law to provide you with this notice. However, insurance companies and their agents are prohibited by law from using the existence of the Guaranty Association to induce you to purchase any kind of insurance policy.**

**The Arkansas Life and Health Insurance Guaranty Association**
**c/o The Liquidation Division**
**1023 West Capitol**
**Little Rock, Arkansas 72201**

**Arkansas Insurance Department**
**1200 West Third Street**
**Little Rock, Arkansas 72201-1904**

---

The state law that provides for this safety-net is called the Arkansas Life and Health Insurance Guaranty Association Act ("Act"). The following paragraphs are a brief summary of the Act's coverages, exclusions and limits. This summary does not cover all provisions of the Act; nor does it in any way change anyone's rights or obligations under the Act or the rights or obligations of the Guaranty Association.

### COVERAGE

Generally, individuals will be protected by the Guaranty Association if they live in this state and hold a life, annuity or health insurance contract or policy, or if they are insured under a group insurance contract issued by a member insurer. The beneficiaries, payees or assignees of insured persons are protected as well, even if they live in another state.

GAN-GRP-AR NOTICE-P/C                                                                                    12

06/01/14

## EXCLUSIONS FROM COVERAGE

However, persons owning such policies are NOT protected by the Guaranty Association if:

* they are eligible for protection under the laws of another state (this may occur when the insolvent insurer was incorporated in another state whose guaranty association protects insureds who live outside that state);

* the insurer was not authorized to do business in this State;

* their policy or contract was issued by a nonprofit hospital or medical service organization, an HMO, a fraternal benefit society, a mandatory state pooling plan, a mutual assessment company or similar plan in which the policyholder is subject to future assessments, or by an insurance exchange.

The Guaranty Association also does NOT provide coverage for:

* any policy or contract or portion of a policy which is not guaranteed by the insurer or for which the owner has assumed the risk, such as non-guaranteed amounts held in a separate account under a variable life or variable annuity contract;

* any policy of reinsurance (unless an assumption certificate was issued);

* interest rate yields that exceed an average rate;

* dividends, voting rights, and experience rating credits;

* credits given in connection with the administration of a policy by a group contract holder;

* employers' plans to the extent they are self-funded (that is, not insured by an insurance company, even if an insurance company administers them);

* unallocated annuity contracts (which give rights to group contractholders, not individuals);

* unallocated annuity contracts issued to/in connection with benefit plans protected under Federal Pension Benefit Corporation ("FPBC") (whether the FPBC is yet liable or not);

* portions of an unallocated annuity contract not owned by a benefit plan or a government lottery (unless the owner is a resident) or issued to a collective investment trust or similar pooled fund offered by a bank or other financial institution;

* portions of a policy or contract to the extent assessments required by law for the Guaranty Association are preempted by State or Federal law;

* obligations that do not arise under the policy or contract, including claims based on marketing materials or side letters, riders, or other documents which do not meet filing requirements, or claims for policy misrepresentations, or extra-contractual or penalty claims;

* contractual agreements establishing the member insurer's obligations to provide book value accounting guarantees for defined contribution benefit plan participants (by reference to a portfolio of assets owned by a nonaffiliate benefit plan or its trustees).

GAN-GRP-AR NOTICE-P/C

27

12
06/01/14

## LIMITS ON AMOUNT OF COVERAGE

The Act also limits the amount the Guaranty Association is obligated to cover:  The Guaranty Association cannot pay more than what the insurance company would owe under a policy or contract.  Also, for any one insured life, the Guaranty Association will pay a maximum of $300,000 - no matter how many policies and contracts there were with the same company, even if they provided different types of coverages.  Within this overall $300,000 limit, the Association will not pay more than $300,000 in health insurance benefits, $300,000 in present value of annuity benefits, or $300,000 in life insurance death benefits or net cash surrender values - again, no matter how many policies and contracts there were with the same company, and no matter how many different types of coverages.  There is a $1,000,000 limit with respect to any contract holder for unallocated annuity benefits, irrespective of the number of contracts held by the contract holder.  These are limitations for which the Guaranty Association is obligated before taking into account either its subrogation and assignment rights or the extent to which those benefits could be provided out of the assets of the impaired or insolvent insurer.

GAN-GRP-AR NOTICE-P/C

12

06/01/14

## SUMMARY PLAN DESCRIPTION

The following information together with your group insurance certificate issued to you by The Lincoln National Life Insurance Company of Fort Wayne, Indiana, is the Summary Plan Description required by the Employee Retirement Income Security Act of 1974 to be distributed to participants in the Plan. This Summary Plan Description is only intended to provide an outline of the Plan's benefits. The Plan Document will govern if there is any discrepancy between the information contained in this Description and the Plan.

The name of the Plan is:   Group Long Term Disability Insurance for Employees of Senior Living Communities of Arkansas, LLC.

The name, address and ZIP code of the Sponsor of the Plan is:  Senior Living Communities of Arkansas, LLC, 10304 Queensbury Way, Ft. Smith, AR, 72908.

Employer Identification Number (EIN): 32-0265174                    IRS Plan Number:  503

The name, business address, ZIP code and business telephone number of the Plan Administrator is:   Senior Living Communities of Arkansas, LLC, 10304 Queensbury Way, Ft. Smith, AR, 72908, (479) 461-4258.

The Plan Administrator is responsible for the administration of the Plan and is the designated agent for the service of legal process for the Plan. Functions performed by the Plan Administrator include:  the receipt and deposit of contributions, maintenance of records of Plan participants, authorization and payment of Plan administrative expenses, selection of the insurance consultant, selection of the insurance carrier and assisting The Lincoln National Life Insurance Company. The Lincoln National Life Insurance Company has the sole discretionary authority to determine eligibility and to administer claims in accord with its interpretation of policy provisions, on the Plan Administrator's behalf (this does not apply to employers sitused in California or to California residents).

Type of Administration. The Plan is administered directly by the Plan Administrator with benefits provided in accordance with provisions of the group insurance policy issued by The Lincoln National Life Insurance Company whose Group Insurance Service Office address is 8801 Indian Hills Drive, Omaha, Nebraska.

Type of Plan. The benefits provided under the Plan are:  Group Long Term Disability Insurance benefits.

Type of Funding Arrangement: The Lincoln National Life Insurance Company.

All employees are given a Certificate of Group Insurance which contains a detailed description of the Benefits, Pre-Existing Condition Limitation, Exclusions and Prior Carrier Credit provisions. The Certificate also contains the Schedule of Benefits which includes information on the Benefit Percentage, Maximum and Minimum Monthly Benefits, Elimination Period, Maximum Benefit Period, Own Occupation Period and Waiting Period. If your Booklet, Certificate or Schedule of Benefits has been misplaced, you may obtain a copy from the Plan Administrator at no charge.

Eligibility. Full-time employees working at least 20 hours per week.

Employees become eligible on the first of the month coinciding with or next following active full-time employment.

Contributions. You are required to make contributions for Long Term Disability Insurance.

The Plan's year ends on: June 30th of each year.

The name and section of relevant Collective Bargaining Agreements: None

The name, title and address of each Plan Trustee: None

GL-SPD-2                                                                      2002(LTD)
                                                                              06/01/14

**Loss of Benefits.** The Plan Administrator may terminate the policy, or subject to The Lincoln National Life Insurance Company's approval, may modify, amend or change the provisions, terms and conditions of the policy. Coverage will also terminate if the premiums are not paid when due. No consent of any Insured Person or any other person referred to in the policy will be required to terminate, modify, amend or change the policy. See your Plan Administrator to determine what, if any, arrangements may be made to continue your coverage beyond the date you cease active work.

**Claims Procedures.** You may obtain claim forms and instructions for filing claims from the Plan Administrator or from the Group Insurance Service Office of The Lincoln National Life Insurance Company. To expedite the processing of your claim, instructions on the claim form should be followed carefully; be sure all questions are answered fully. In accordance with ERISA, The Lincoln National Life Insurance Company will send you a written notice of its claim decision within:

- 45 days after receiving the first proof of a claim (105 days under special circumstances).

If a claim is partially or wholly denied, this written notice will explain the reason(s) for denial, how a review of the decision may be requested, and whether more information is needed to support the claim. You may request a review of the claim by making a written request to The Lincoln National Life Insurance Company within:

- 180 days after receiving a denial notice of a claim.

This written request for review should state the reasons why you feel the claim should not have been denied and should include any additional documentation to support your claim. You may also submit for consideration additional questions or comments you feel are appropriate, and you may review certain non-privileged information relating to the request for review. The Lincoln National Life Insurance Company will make a full and fair review of the claim and provide a final written decision to you within:

- 45 days after receiving the request for review (90 days under special circumstances).

If more information is needed to resolve a claim, the information must be supplied within 45 days after requested. Any resulting delay will not count toward the above time limits for claims or appeals processing. Please refer to your certificate of insurance for more information about how to file a claim, how to appeal a denied claim, and for details regarding the claims procedures.

### Statement of ERISA Rights

The following statement of ERISA rights is required by federal law and regulation. As a participant in this plan, you are entitled to certain rights and protections under the Employee Retirement Income Security Act of 1974 (ERISA). ERISA provides that all Plan participants shall be entitled to:

**Receive Information About Your Plan and Benefits.** Examine, without charge, at the Plan Administrator's office and at other specified locations, such as work sites and union halls, all documents governing the plan, including insurance contracts and collective bargaining agreements, and a copy of the latest annual report (Form 5500 Series), if any, filed by the plan with the U.S. Department of Labor and available at the Public Disclosure Room of the Pension and Welfare Benefit Administration.

Obtain, upon written request to the Plan Administrator, copies of documents governing the operation of the plan, including insurance contracts and collective bargaining agreements, and copies of the latest annual report (Form 5500 Series), if any, and updated summary plan description. The administrator may make a reasonable charge for copies.

Receive a summary of the plan's annual financial report if the plan covers 100 or more participants. The Plan Administrator is required by law to furnish each participant with a copy of this summary annual report.

**Prudent Actions by Plan Fiduciaries.** In addition to creating rights for plan participants, ERISA imposes duties upon the people who are responsible for the operation of the employee benefit plan. The people who operate your plan, called "fiduciaries" of the plan, have a duty to do so prudently and in the interest of you and other plan participants and beneficiaries. No one, including your employer, your union, or any other person, may fire you or otherwise discriminate against you in any way to prevent you from obtaining a welfare benefit or exercising your rights under ERISA.

**Enforce Your Rights.** If your claim for a welfare benefit is denied or ignored, in whole or in part, you have a right to know why this was done, to obtain copies of documents relating to the decision without charge, and to appeal any denial, all within certain time schedules.

Under ERISA, there are steps you can take to enforce the above rights. For instance, if you request a copy of plan documents or the latest annual report from the plan and do not receive them within 30 days, you may file suit in a Federal court. In such a case, the court may require the Plan Administrator to provide the materials and pay you up to $110 a day until you receive the materials, unless the materials were not sent because of reasons beyond the control of the Administrator. If you have a claim for benefits which is denied or ignored, in whole or in part, you may file suit in a state or Federal court. If it should happen that plan fiduciaries misuse the plan's money, or if you are discriminated against for asserting your rights, you may seek assistance from the U.S. Department of Labor, or you may file suit in a Federal court. The court will decide who should pay court costs and legal fees. If you are successful the court may order the person you have sued to pay these costs and fees. If you lose, the court may order you to pay these costs and fees, for example, if it finds your claim is frivolous.

**Assistance with Your Questions.** If you have any questions about your plan, you should contact the Plan Administrator. If you have any questions about this statement or about your rights under ERISA, or if you need assistance in obtaining documents from the plan administrator, you should contact the nearest office of the Pension and Welfare Benefits Administration, U.S. Department of Labor, listed in your telephone directory or the Division of Technical Assistance and Inquiries, Pension and Welfare Benefits Administration, U.S. Department of Labor, 200 Constitution Avenue, N.W., Washington, D.C. 20210. You may also obtain certain publications about your rights and responsibilities under ERISA by calling the publications hotline of the Pension and Welfare Benefits Administration.

GL-SPD-2

2002(LTD)
06/01/14



Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.



EXHIBIT

B

_____

**The Lincoln National Life Insurance Company**
Service Office:
PO Box 2609
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.Lincoln4benefits.com

September 18, 2019

DANIEL A WEBB PA ATTORNEY AT LAW
ATTN DANIEL WEBB
111 CENTER ST
SUITE 1200 STEPHENS BLDG
LITTLE ROCK, AR 72201

*8/7/2021*

Re:     Policyholder: Senior Living Communities of Arkansas, L
         Policy Number: 00040000300202176
         Claim Number: 1140000385
         Claimant: Stephanie Darrough

Dear Mr. Webb:

We have completed our review of your client's Long Term Disability appeal.  Based on the information provided, we have determined that we are unable to approve benefits beyond 08/07/2018.  In our appeal review process, all information previously submitted as well as any new documentation was used to make a determination.

To receive benefits under the policy issued to Senior Living Communities of Arkansas, L, an individual must satisfy all of the provisions of the policy.  This includes, but is not limited to, the following:

> **TOTAL DISABILITY or TOTALLY DISABLED** means that an Insured Employee, due to an Injury or Sickness is unable:
>
> 1.      during the Elimination Period and the Own Occupation Period, to perform each of the main duties of the Insured Employee's regular occupation; and
> 2.      after the Own Occupation Period, to perform each of the main duties of any gainful occupation for which the Insured Employee's training, education or experience will reasonably allow.

The policy has a 24 month Own Occupation Period which ended on 12/22/2015.  Benefits for your client's claim were paid beyond that date to 08/07/2018.  In order to be considered Totally Disabled beyond this date, the medical documentation must support your client's inability to perform each of the main duties of any occupation for which she is qualified.  As such, in considering whether your client qualifies for Long Term Disability benefits beyond 08/07/2018,

©2019  Lincoln National Corporation www.lincoln4benefits.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

we evaluated whether she would be restricted or limited from performing the main duties of any occupation for which she is qualified.

Your client's entire file was reviewed upon appeal. Disability must be supported from 08/07/2018 forward, which was the focus of our determination.

## Summary of Initial Claim Filing

As you know, your client's claim was originally approved from 12/22/2013 to 08/07/2018 as we found your client met the definition of Total Disability that applied during this period. Benefits were terminated as of 08/07/2018 because we determined your client was not Totally Disabled as defined above. Our evaluation included review of the medical documentation including consultation with and/or review of a written report from an independent physician who is Board Certified in Orthopedic Surgery.  For complete details, please refer to our letter dated 08/18/2018.

## Summary of First Level of Appeal

On 08/17/2018, your client filed an appeal in response to our determination to terminate benefits.

There was insufficient documented evidence of significant or severe neurologically impairing central spinal cord or nerve root impingement, high grade vertebral and joint weakness and instability, significant gait instability resulting in frequently witnessed falls, significant distal extremity circulatory, sensory and motor deficits, muscular atrophy, dexterity or coordination problems that would otherwise translate into a wholly diminished sitting, standing, walking, lifting and fingering functional capacity.

We received limited medical documentation for your client's heart condition and we acknowledged the opinions of her treating physicians.  In response to comments made in these letters, we would like to point out that the medical records provided by your client's physicians do not support the statements.

Our review of the medical documentation which included consultation with and/or review of a written report from an independent physician who is Board Certified in Physical Medicine and Rehabilitation and Pain Medicine, did not support restrictions and limitations that would render your client unable to perform the main duties of any gainful occupation beyond 08/07/2018. For complete details, please refer to our letter dated 01/28/2019.

## Summary of Second Level of Appeal

On 07/01/2019, your client filed a second and final appeal in response to our determination to uphold our previous decision to terminate benefits.  Additional information was submitted from Legacy Neurology, Dr. Lewis and UAMS as well as diagnostic test results and a vocational evaluation report.

The medical records document a long history of neck, pain, low back pain, left arm pain, right leg pain, pain in both hands, and right foot and ankle pain receiving ongoing treatment (08/01/2018-04/25/2019). Your client has seen and been treated by multiple providers including: Dr. Lewis (Family Medicine), Dr. Abraham (Pain Management), Dr. Martin

(Orthopedics) and Dr. Sullivan (Neurosurgery). Treatment consisted of medication management gabapentin, hydrocodone, and meloxicam to control pain with reported relief in pain and without any documented side effects. Additional treatments consisted of steroid injections into the ankle and lumbar and cervical epidural steroid injections (June 2018-March 2019) with reported 60-80% temporary relief in pain; however, she reports enough relief that she would like to proceed with cervical medial branch block used to interrupt the pain signals. Exams document neck and lumbar spinal tenderness with some decrease in range of motion. There are no neurological deficits such as decreased strength, loss of sensation or altered gait.

A cervical MRI on 01/04/2019 showed no significant stenosis (narrowing) or nerve compression and a lumbar MRI on 01/16/2019 showed mild canal stenosis without nerve compression.

The medical evidence fails to demonstrate significant pain, weakness, impaired gait or neurological deficits to support ongoing restrictions and limitations from 08/07/2018 through 03/05/2019. The restrictions and limitations outlined by the peer reviewer, Dr. Grattan, and Dr. Lewis are reasonable and would not preclude all work activities.

It is reasonable to support restrictions and limitations from 03/05/2019-04/25/2019 due to right ankle surgery at which time your client is noted to be doing well with healed incisions and she is transitioned into an ankle support orthotic. There are no further records for review on appeal after 07/29/2018 to provide further insight into any of your client's cardiac conditions beyond 08/01/2018. The medical evidence does not support the claims in Dr. Lewis' letter.

Clarification was obtained from the health care consultant regarding your client's restrictions and limitations. It was the opinion of the reviewer that the restrictions and limitations outlined by peer reviewer Dr. Grattan are reasonable and would not preclude all work activities. It would be reasonable to periodically adjust positions throughout the workday per position of comfort. i.e. taking reasonable breaks, stretching, alternating positions throughout the day to minimize or mitigate pain and discomfort. The medical evidence does not show support for more restrictive limitations.

Following the medical review, a vocational review was completed. It was the opinion of the reviewer that the previously identified occupations (noted below) remained appropriate based upon your client's identified restrictions and limitations.

On 08/12/2019, we sent copies of the medical and vocations review reports to you to give you the opportunity to provide the assessments to your client's treating physician(s) for further review and comment. In response, you submitted additional medical records from Baptist Health spanning 06/17/2019-06/21/2019. This information was forwarded to the health care consultant for additional review.

Records received on addendum include an office visit from Dr. Holloway (Cardiology) and hospital records.

Your client saw Dr. Holloway on 06/17/2019 for complaints of recurrent left-sided chest discomfort that was sometimes exertional. A recent ER evaluation was noted to be negative. She has a history of prior heart attack and possible angioplasty. Physical exam was normal. Although the prior non-invasive evaluation was negative, she was convinced something is

wrong with her heart. Plan was for a repeat cardiac catherization which showed normal coronary arteries.

You client was hospitalized 06/18/2019-06/21/2019 for sudden onset blurry vision in both eyes and generalized numbness; possible trans ischemic attack. Diagnostic testing (brain MRI, ECHO, head CT) during admission was unremarkable and did not reveal any cerebral vascular accident (stroke). Her blurry vision resolved and she was noted to be stable on the day of discharge.

It is reasonable to support functional impairment from 06/17/2019-06/21/2019 while your client has cardiac evaluation and during her hospitalization. There are no abnormal exam findings or diagnostics from a cardiac standpoint to support restrictions and limitations, therefore, the prior determination remains unchanged.

## Second Level Appeal Decision

We understand that your client has been diagnosed with several conditions including but not limited to unspecified arthropathy, neuroma excision, CRPS, cervical disc degenereation, GERD, coronary artery disease, low back pain, chronic diarrhea and hypertension. However, our review of the medical documentation, which included consultation with and/or review of a written report from a health care consultant, did not support that your client was Totally Disabled beyond 08/07/2018. We, therefore, find that your client is no longer Totally Disabled under the terms of the policy.

The available clinical documentation does not contain evidence of physical or functional impairment that would preclude any occupational activity. A review of the medical records did not identify restrictions and limitations that would prevent your client from working in a sedentary physical capacity. The medical information in file does not support Total Disability as defined above for the entire time period of 08/07/2018 forward and ongoing.

While we recognize you provided the opinion of your client's treating physician(s) regarding her condition and recovery, we found that the medical evidence provided did not support those decisions. The medical records did not support restrictions and limitations that would preclude you from performing in any sedentary occupation.

Please remember the time period in question for Total Disability is from the date that we stopped paying disability benefits, which was 08/07/2018, and forward. The medical records submitted in response to the review were reviewed and considered. While it is possible that your client's conditions may have become more severe over time, we are bound to make the disability determination in accordance with the contract provisions and the time periods defined therein.

## Vocational

We reviewed your client's past training, education and work experience to evaluate your client's capacity to perform work-related activity. The documentation provided suggests your client is not limited from working in a sedentary work capacity. The definition of sedentary work capacity, as defined by the Department of Labor, is:

Sedentary work involves sitting most of the time but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are only required occasionally (1-33%) and if all other sedentary criteria are met. Sedentary work may require exertion up to 10 lbs. occasionally and a negligible degree of exertion on a frequent (34-66%) or constant (67-100%) basis.

Using *The Dictionary of Occupational Titles* as a reference, we found that your client would be capable of performing the following sedentary occupations:

| DOT# | Occupation | Wage (mean) |
|---|---|---|
| 372.667-030 | Gate Guard | $11.35/hr. |
| 654.687-010 | Matrix Inspector | $15.96/hr. |
| 237.367-022 | Information Clerk | $11.54/hr. |

The preceding list is just a sample of various jobs that your client shows transferable skills to perform. The list is not all-inclusive and is only a sample of possibilities. The jobs listed are found to exist within your client's area and are appropriate from the standpoint of adequate salary levels relative to your client's prior earnings. NOTE: Current hiring or job availability is not a consideration when identifying occupational alternatives, only that the occupations identified exist within the local labor market.

We are aware that your client's Social Security claim was denied and has been sent to the Appeals Council for review on 07/29/2019. Your client's Social Security information was requested on 07/10/2019; however, to date we have not received this information. Therefore, our decision was based on the information provided, as detailed previously in this letter.

We evaluated this claim by applying the provisions of the policy to the facts and opinions contained in the claim file. We relied upon the following guidelines, internal rules, protocols, standards or other similar criteria in reaching this claim determination:

Our Internal Rule for Gainful Occupation indicate: A gainful occupation is one in which an individual is qualified to perform and could reasonably expect to earn income that is at least 60% of his or her pre-disability income within 12 months of returning to work.

You and your client have exhausted all rights of appeal, and your client's administrative file is now closed.

If your client's plan is subject to ERISA, your client may have other voluntary alternative dispute resolution options, such as mediation. One way to find out what may be available is to contact your client's local U.S. Department of Labor Office and your client's State insurance regulatory agency. In addition, your client has the right to pursue litigation and your client may request copies of records and other information relevant to the claim free of charge.

The employer's plan has a contractual limitations period of three years, which means that a lawsuit must be brought within three years after the date written proof of claim or proof of continued disability was required. The date on which the contractual limitations period expires for this claim is 08/07/2021.

Please contact me directly at the number listed below with any questions you may have or email us at LFGAppeals@lfg.com.

Sincerely,

Kelly Tedford
800-423-2765 *2593
Specialist, Claims
Appeals Department – Claims Solutions Shared Services
The Lincoln National Life Insurance Company